James N. SMITH, Appellant,

v.

AMERICAN FLYERS, INC., Appellee.

No. 47031.

Court of Appeals of Oklahoma,
Division No. 1.

May 20, 1975.

Rehearing Denied July 8, 1975.

Certiorari Denied Sept. 16, 1975.

Released for Publication by Order of Court
of Appeals Sept. 18, 1975.

Wallace, Bickford & Pasley by Harry L. Bickford, Ardmore, for appellant.

Rhodes, Hieronymus, Holloway & Wilson by Page Dobson and Gary C. Bachman, Oklahoma City, for appellee.

BOX, Judge:

An appeal by James N. Smith, plaintiff in the trial court, from summary judgment entered in favor of appellee and defendant below, American Flyers, Inc. For the sake of clarity we refer to the parties by their trial court designation.

At the time of the tragic accident for which plaintiff brought this action, he was a 28 year old student pilot enrolled in a flight school operated by the defendant, American Flyers, Inc. Defendant operated a swimming pool on the premises of the school and held it open to the general public for an admission fee. On July 20, 1967, plaintiff and two friends met at the swimming pool and began playing with three large airplane tire innertubes floating loose at the deep end of the pool, which belonged to defendant.

The three friends played with the innertubes at the deep end of the pool some fifteen or twenty minutes before the accident occurred. At times they were floating on the innertubes and at other times jumping on them from either side of the pool or tossing them back and forth. Plaintiff and another student also each ventured a dive through the center of an innertube. It was apparently not the first time that swimmers had done so, as plaintiff testified that he had seen others chance such a dive, successfully, on prior occasions.

But the second time plaintiff attempted such a dive was different. His friend, Charles Mitchell, was holding the innertube as he had done on plaintiff's previous dive. As plaintiff entered the opening in the center of the innertube he struck his head on the side of the tube. The unfortunate outcome of this accident was that plaintiff was almost completely paralyzed. He subsequently brought this suit, claiming numerous acts of negligence on the part of the defendant. The trial court, after reviewing the depositions, exhibits, and briefs provided by the parties, granted summary judgment in favor of the defendant. For the reasons appearing below the judgment will be affirmed.

▬ We pause to note that we have reviewed the merits of the trial court's action in granting summary judgment in light of the heavy burden, especially pronounced in negligence suits, resting on the moving party. Before a court may properly grant such a motion it must clearly appear that the movant is entitled to a judgment as a matter of law, viewing the supporting material in the light most favorable to his opponent. *Northrup v. Montgomery Ward & Co.*, 529 P.2d 489. Unquestionably, if reasonable men exercising fair and impartial judgment could differ, summary judgment is unwarranted. It is well established, nevertheless, that if the defendant shows the lack of substantial controversy as to one fact material to plaintiff's cause of action which is favorable to defendant, summary judgment is proper even in a negligence action. *Runyon v. Reid*, Okl., 510 P.2d 943.

▬ The trial court's remarks for the record indicates that his decision to grant summary judgment was based primarily on the lack of causal connection between the alleged negligence of the defendant and plaintiff's injury. While we agree that an obvious issue in this case is the problem of causation, both in the sense of causation in fact and proximate cause, we believe that plaintiff's evidence fails to demonstrate the existence of a necessary antecedent to resolution of that issue—a duty of care owed to the plaintiff. As the Supreme Court noted in *Nicholson v. Tacker*, Okl., 512 P.2d 156, at p. 158:

"It is an established rule of law that there can be no actionable negligence where the defendant has breached no duty owed to the plaintiff. Just because the defendant has created a risk which harmed the plaintiff that does not mean that, in the absence of some duty to the plaintiff, the defendant will be held liable."

We believe that the trial judge also recognized the lack of duty owed to plaintiff and that this was an alternative ground of his decision.

The gravamen of plaintiff's right to relief is that the defendant, through its agents and servants, failed to perform certain affirmative acts which it was under a duty to do in order to protect plaintiff from the injury which he consequently received.

Plaintiff relies on two sources for the duty of care allegedly owed him by the defendant: (1) the duty imposed by various statutes and regulations pertaining to the safety of public bathing places; and (2) the well recognized duty of a landowner to an invitee.

For his statutory right to relief plaintiff relies on the following statutes in the public health code: (1) 63 O.S.1971, § 1–1015(b), which requires that public bathing places be maintained in a sanitary and safe condition; (2) 63 O.S.1971, § 1–1016, which requires that the equipment of public bathing places be such as to "minimize accidents and to provide for the health and safety of the patrons"; and (3) 63 O.S. 1971, § 1–1014 which authorizes the State Board of Health to promulgate reasonable regulations "pertaining to the design, construction, safety, sanitation, and sanitary operation of public bathing places."

Plaintiff also relies on numerous sections of "The Oklahoma Public Bathing Place Interpretive Code," a code of regulations

promulgated by the State Board of Health. He urges that we consider these regulations as having the force and effect of a statute for purposes of proving "negligence per se," relying on *Jack Cooper Transport Co. v. Griffin*, Okl., 356 P.2d 748.

The Restatement of the Law of Torts 2d, § 286 provides:

"The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

"(a) to protect a class of persons which includes the one whose interest is invaded, and

"(b) to protect the particular interest which is invaded, and

"(c) to protect that interest against the kind of harm which has resulted, and

"(d) to protect that interest against the particular hazard from which the harm results."

See also 57 Am.Jur.2d *Negligence* § 238; and Prosser, Law of Torts § 36, which note that the weight of authority is in accord with the Restatement on this point.

■ In light of these prerequisites to using the statutes or regulations as a standard of conduct, we fail to see how the above statutes are applicable in this case. The statutes no doubt have as their purpose the protection of public bathers from disease and accidental injury. They can properly be construed as placing a duty on the operator of a public pool to take affirmative action to prevent unsanitary or dangerous conditions in the pool. They cannot however, be reasonably construed as placing a duty upon defendant to protect plaintiff from injuries brought about by his own purposive act of diving through an innertube under circumstances of obvious danger. We find nothing in these statutes indicating a legislative intent or policy to protect plaintiff from the kind of hazard from which his injury resulted or the harm which he suffered.

We reach the same conclusion with respect to the numerous regulations relied on by plaintiff. These regulations simply require the presence of an adequate number of life guards on hand, and that these life guards be subject to no other duties which might detract them from their work. The owner is also required to use a life guard tower and the life guard must be present in the tower.

■ Giving plaintiff the benefit of a most liberal construction, in light of the decisions based on similar regulations in other jurisdictions, we find that these regulations impose a duty on defendant to exercise reasonable care to maintain the safety of the pool by providing adequate supervision. Included in this concept is the duty to rescue swimmers who get into danger and to supervise the activities in the pool generally, so as to prevent injury to patrons from the boisterous conduct of other patrons or from conditions in the water generally. See 48 A.L.R.2d 108, 127 and 4 Am.Jur.2d *Amusements and Exhibitions* § 84. But we cannot conceive how these regulations can reasonably be construed to provide such an extensive duty of supervision that defendant can be held liable for not *preventing plaintiff* from intentionally *taking an unnecessary risk of injury by diving at the innertube*. The proprietor of a bathing pool is not the insurer of the safety of his patrons. *Adams v. U. S.*, D. C.Okl., 239 F.Supp. 503. We do not believe the regulations of the State Board of Health were designed to make him one. The purpose of the regulations cannot properly be said to protect plaintiff from harm resulting from any such self-induced hazard.

Nor can the common law duty of a proprietor of a public pool properly be viewed as requiring such an extensive duty to supervise the activities of his patrons that he is liable for not preventing a patron from harming himself by encountering an obvious hazard.

■ What common law duties did the defendant owe to the plaintiff? If a

plaintiff was an invitee, defendant obviously owed him the recognized duty to exercise ordinary care to maintain the premises, both in and under the water, in a reasonably safe condition, and to warn him of the existence of hidden dangers known or which reasonably should have been known to it. See generally *Nicholson v. Tacker*, Okl., 512 P.2d 156, and Prosser, Law of Torts § 61. However, it is clear that the general duty is qualified by the principle that the owner need not warn the invitee of open and obvious danger. Thus the Supreme Court in *Nicholson v. Tacker*, supra, at p. 159 noted:

> "The possessor of land is liable to a visitor only if he knows or should have known of a dangerous condition and realizes that it involves unreasonable risk and has *no reason to believe that the plaintiff will discover the condition* and fails to warn the visitor so that the latter may avoid the harm." (Emphasis added.)

 We conclude, as did the trial court, that there is a risk of danger obvious to a reasonable man presented in diving at an innertube. There is nothing about an innertube which has a deceptively innocent appearance. Used properly it is not dangerous. When employed as a plaything to dive at, it becomes dangerous in an obvious way. The diver in this instance creates the hazard himself. We hold therefore that reasonable men could only conclude that the danger presented by the innertube used in the manner in which plaintiff used it, was obvious and that defendant was under no duty to warn plaintiff of this risk of danger.

 Nor was defendant under a duty to take affirmative action to prevent plaintiff from taking the dive. Once either the duty to warn has been exercised or the condition is so obvious as to negate the need for furnishing a warning, the duty of the operator of the pool to a diver encountering the condition is discharged. He simply owes no duty to the patron who nevertheless encounters obvious danger. As the Supreme Court observed in *Nicholson v. Tacker*, supra, at p. 159:

> "In the case of the open and obvious danger, the fact that the danger is readily apparent to the plaintiff makes it clear that the defendant has not breached any duty to the plaintiff. The presence of an open and obvious danger is akin to the defendant nailing a 'Danger' sign on the premises.

> "Insofar as the defense of assumption of risk is concerned, it cannot be said that plaintiff's continuing to use the premises in the presence of an obvious danger requires invoking that particular doctrine. Rather, the fact that the danger is open and obvious *nullifies* duty of defendant to plaintiff. Before the defense of assumption of the risk can be applied, there must be a finding of primary negligence if he has a duty. That defendant has created a danger does not, per se, justify saying he is negligent. The duty to use care toward the plaintiff is satisfied if the danger is sufficiently obvious." (Emphasis added.)

The Supreme Court's holding in Nicholson, supra, concerning the defense of assumption of risk is equally applicable to the defense of contributory negligence. Therefore there were no questions of negligence or assumption of risk which required submission of this case to the jury. As a matter of law defendant did not owe plaintiff a duty to protect him from the harm he received. Accordingly the trial judge properly disposed of this action by summary judgment.

Affirmed.

ROMANG, P. J., and REYNOLDS, J., concur.